UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ANGELA DIPILATO,

                              Plaintiff,                    **REPORT AND
                                                            RECOMMENDATION**

              -against-
                                                            07 Civ. 7636 (CS) (GAY)
7-ELEVEN, INC., JEANNE LYNCH, MARTINA
HAGLER, and ARTHUR RUBINETT,

                              Defendants.
----------------------------------------------------------------X


TO THE HONORABLE CATHY SEIBEL, United States District Judge:

        Angela DiPilato, appearing pro se, brings this action under Title VII of the Civil

Rights Act of 1964 (42 U.S.C. §§ 2000e to 2000e-17); Conspiracy to Interfere with Civil

Rights (42 U.S.C. § 1985(3)); the Age Discrimination in Employment Act (29 U.S.C. §§

621-34); the United States and New York State Constitutions; New York's Human

Rights Law (N.Y. Exec. Law §§ 290-300); and New York Civil Rights Law § 40-c.[1]

Plaintiff DiPilato asserts these claims against defendants 7-Eleven, Lynch, Hagler, and

Rubinett for allegedly denying her application to become a 7-Eleven franchisee based

on discriminatory reasons.  Presently before this Court are defendants' motion to

dismiss all of plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure ("FRCP"), on the grounds that plaintiff failed to state claims for which relief

can be granted.[2]  For the reasons that follow, the Court converts defendants' motion to

_____

        [1] The Court notes that plaintiff's first cause of action summarizes her claims and
does not set forth an independent claim.

        [2] Defendants also moved to strike plaintiff's claim for specific performance
pursuant to Rule 12(f) of the FRCP, but the Court consolidates said motion as part of

dismiss to a motion for summary judgment pursuant to Rule 56 of the FRCP, and

respectfully recommends that defendants' motions be GRANTED in part and DENIED in

part.

## I.  MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT STANDARDS

In evaluating a motion to dismiss complaint under FRCP 12(b)(6), this Court is

"not to weigh the evidence that might be presented at a trial but merely to determine

whether the complaint itself is legally sufficient."  Goldman v. Belden, 754 F.2d 1059,

1067 (2d Cir. 1985).  In doing so, the Court "must accept as true all of the factual

allegations set out in plaintiff's complaint, draw inferences from those allegations in the

light most favorable to plaintiff, and construe the complaint liberally."  Gregory v. Daly,

243 F.3d 687, 691 (2d Cir. 2001).  The Court must deny a motion to dismiss for failure

to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of

facts in support of his [or her] claim which would entitle him to relief."  Stewart v.

Jackson & Nash, 976 F.2d 86, 87 (2d Cir. 1992) (quoting Conley v. Gibson, 355 U.S.

41, 45-46 (1957)).

When the parties present the Court with materials outside the pleadings both in

support of and in opposition to a 12(b)(6) motion to dismiss, the Court must either

exclude such materials and decide the motion to dismiss on the complaint alone or

convert it to a summary judgment motion pursuant to FRCP 56.  Goyette v. DCA

Advertising Inc., 830 F. Supp. 737, 741 (S.D.N.Y. 1993) (citing Fonte v. Bd. of

defendants' motion to dismiss.  Also before this Court is plaintiff's motion to amend her
complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure.  The
undersigned addresses this motion in a separate order.

2

Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir. 1998)); Carter v. Stanton, 405 U.S. 669, 671 (1971).  The Court may make the conversion after "'all the parties [are] given reasonable opportunity to present all materials made pertinent to such motion by [FRCP] 56.'" Goyette, 830 F. Supp. at 741 (quoting In re G. & A. Books, Inc., 770 F.2d 288, 295 (2d Cir. 1985)).  "A party cannot complain of lack of a reasonable opportunity to file relevant materials if both sides have already filed with the Court affidavits, depositions or other evidence admissible at trial." Id. (citing In re G. & A. Books, Inc., 770 F.2d at 295).

In the present case, both parties have submitted affidavits, declarations, or exhibits.  Defendants have filed a notice to the pro se plaintiff that defendants' motion to dismiss could be converted into a motion for summary judgment.  Thus, both parties are on notice that the Court may consider the additional materials they submitted in connection with their pleadings.  Therefore, the Court converts defendants' FRCP 12(b)(6) motion to dismiss into a motion for summary judgment.  As such, plaintiff may not rely only on the allegations in her complaint, but must respond to defendants' motion, by affidavit or other permissible method, with "specific facts showing a genuine issue for trial."  FRCP 56(e).  Plaintiff did in fact respond to defendants' motion with her Affidavit/Affirmation and accompanying exhibits.  Plaintiff's Affidavit/Affirmation (Jan. 29, 2008).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FRCP 56(c).  When deciding a summary judgment

3

motion, the Court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party.  See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999).  The question is whether, in light of the evidence, a rational jury could find in favor of the nonmoving party.  See Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).  Where a plaintiff fails to establish an essential element of her claim, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (internal quotations and citations omitted).

Pleadings submitted by pro se plaintiffs may be held to "less stringent standards than those applicable to formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972).  See also Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [the pro se plaintiff's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest."); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988) ("special solicitude" is afforded to pro se plaintiffs with regards to summary judgment motions).  However, pro se plaintiffs are not exempt from the "rules of procedural and substantive law."  Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983).  See also Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991)) (a "pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment").

## II.  BACKGROUND

The following facts are gathered from the parties' statements pursuant to Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York, from the pleadings and from affidavits, affirmations and exhibits submitted by the parties in support of their contentions.  Any disputes of material fact are noted.

Plaintiff is a forty-three (43) year-old female.  Defendant 7-Eleven, Inc. ("7-Eleven") is incorporated in the state of Texas with offices in Melville, New York and Dallas, Texas.  Defendants Jeanne Lynch, Martina Hagler, and Arthur Rubinett are employees of 7-Eleven.  Lynch is a national franchise sales coordinator and Hagler is a franchise sales manager.  Rubinett is senior counsel at 7-Eleven.

Plaintiff applied to become a 7-Eleven franchisee in February 2007.  In March 2007, plaintiff asserts that she, along with "a consultant . . . Kenneth A. Frank," called Lynch to follow up on the status of her application.  Plaintiff alleges Lynch stated that plaintiff's application should be denied because a single female over the age of forty (40) would not be suitable for such a franchise.  Complaint ¶ 13.  Lynch allegedly advised that the New York franchise office would contact plaintiff.  Id.  In April 2007, having not heard from the New York office, plaintiff again called 7-Eleven.  Id. ¶ 14.  This time she spoke with Hagler who informed her that her application had been denied and a corresponding letter had already been mailed.  Id.

Plaintiff alleges she received the letter of denial shortly after the telephone conversation with Hagler.  The letter stated that it was not in the parties' "mutual best interest" to enter into a franchise agreement and thus 7-Eleven discontinued plaintiff's

application process.  Letter from Martina Hagler, Franchise Sales Manager, 7-Eleven, to
Angela DiPilato 1 (Mar. 26, 2007), Plaintiff's Ex. C [hereinafter "Hagler Letter"].  Plaintiff
again called Hagler seeking information as to why her application was denied.
Complaint ¶ 18.  Hagler allegedly did not provide further explanation.  Id.

Subsequently, plaintiff issued a letter to Hagler claiming that 7-Eleven's failure to
provide a reason for the denial of her application "violate[d] both federal and state laws"
on her belief that she was being discriminated against because of her "sex, race, color
and/or age."  Letter from Angela DiPilato to Martina Hagler, Franchise Sales Manager,
7-Eleven, 1-2 (Apr. 14, 2007), Plaintiff's Ex. D [hereinafter "DiPilato Letter"].  DiPilato
asked that her application be reviewed again.  Id. at 2.  Rubinett responded to the
DiPilato Letter directly.  Rubinett disclosed that 7-Eleven used "both subjective and
objective" factors in considering franchise applications.  Letter from Arthur Rubinett,
Senior Counsel, 7-Eleven, to Angela Dipilato 1 (Apr. 17, 2007), Plaintiff's Ex. E
[hereinafter "Rubinett Letter"].  He further stated that 7-Eleven relied "heavily on the
judgment of [its] experienced franchise specialists and local management in making
qualification decisions."  Id.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission
("EEOC") on May 1, 2007.  Plaintiff's Ex. F.  The EEOC dismissed plaintiff's complaint
and provided her with her "Notice of Right to Sue."  Complaint Ex. A-B.  Plaintiff filed a
complaint with the State of New York Office of the Attorney General on July 10, 2007.
Plaintiff's Ex. N.  Plaintiff commenced this action on August 28, 2007, based on her
federal claims and diversity jurisdiction.

### III.  PLAINTIFF'S CLAIM FOR SPECIFIC PERFORMANCE

Plaintiff seeks, as remedy to defendants' alleged discrimination, specific performance in the form of granting plaintiff a 7-Eleven franchise.  She seeks that which "the plaintiff would have acquired had the defendants not discriminated against her": a franchise located in New York, which has a gross annual income in excess of one million dollars ($1,000,000).  Plaintiff's Memo. of Law in Opp. to Motion at 45; Complaint ¶ E.  Defendants contend that plaintiff is unable to seek specific performance because the parties did not have a contract obligating 7-Eleven to grant plaintiff a franchise.

Specific performance is an equitable remedy granted by discretion of the Court. Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams., No. 04 Civ. 10014, 2006 WL 1493132, at *7 (S.D.N.Y. May 31, 2006) (quoting Laurus Master Fund, No. 02 Civ. 5340, 2003 WL 21219791, at *3 (S.D.N.Y. May 21, 2003)).  A court may grant specific performance where money damages would not suffice, such as when "the subject matter of the particular contract is unique and has no established market value." Sokoloff v. Harriman Estates Corp., 754 N.E.2d 184, 188 (N.Y. 2001) (citation omitted). The remedy "is appropriate when (1) the contract is valid, (2) plaintiff has substantially performed under the contract and is willing and able to perform its remaining obligations, (3) defendant is able to perform its obligations, and (4) plaintiff has no adequate remedy at law."  Travellers Int'l AG v. Trans World Airlines, Inc., 722 F. Supp. 1087, 1104 (S.D.N.Y. 1989) (citation omitted).

In considering whether specific performance is an appropriate remedy, it is clear that a contractual relationship or proprietary interest must exist.  In the present case, plaintiff did not enter into a contract with defendants.  She merely made application to

7

become a franchisee.  Plaintiff has no investment or entitlement in a franchise through

the application process.  Furthermore, in plaintiff's own words, a franchise has an

established market value based on its annual gross income.  As such, specific

performance is an inappropriate remedy.  Thus, it is respectfully recommended that

defendants' motion for summary judgment be granted.


## IV. EMPLOYMENT DISCRIMINATION  CLAIMS

Plaintiff alleges that defendants unlawfully discriminated against her when they

denied her a 7-Eleven franchise because of her age, sex, gender, color, race, national

origin, and/or marital status, as prohibited by Title VII of the Civil Rights Act ("Title VII"),

the Age Discrimination in Employment Act ("ADEA"), and New York's Human Rights

Law  ("NYHRL").  See Complaint ¶¶ 30, 35, 44, 50.  Title VII forbids an employer from

discriminating against "any individual" based on that individual's "race, color, religion,

sex, or national origin."  42 U.S.C. § 2000e-2(a).  Title VII's prohibitions apply whether

the individual is an employee or an applicant for employment.  Id. § 2000e-2(a)(1).  The

ADEA makes it unlawful for an employer to "fail or refuse to hire or to discharge any

individual or otherwise discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such

individual's age."  42 U.S.C. § 623(a)(1).  The ADEA prohibits employers from

discriminating against both employees and applicants for employment.  Id. § 623(d).

The prohibitions encompassed in the ADEA are "limited to individuals who are at least

40 years of age."  Id. § 631(a).  NYHRL makes it unlawful for an employer to

discriminate against individual employment applicants and employees on the basis of

"age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, or marital status." N.Y. Exec. Law § 296(1)(a). NYHRL further prohibits employers from denying persons the right to be admitted to, participate in, or pursue training programs "because of race, creed, color, national origin, sexual orientation, military status, sex, age, disability, or marital status." Id. § 296(1-a)(b)-(c).

Plaintiff claims that defendant Lynch denied plaintiff's application to become a 7-Eleven "franchise[e]/employee" and thus denied her access to 7-Eleven's Franchisee training program because she is a single woman over forty (40) years old. Complaint ¶¶ 11, 13, 50. Plaintiff contends that defendants Hagler and Rubinett affirmed Lynch's position when they failed to provide an alternative reason for the denial. Complaint ¶¶ 14, 20. Plaintiff has not alleged any facts which support her claims that defendants discriminated against her because of color, race, or national origin. Her conclusory statements that such discrimination took place, see Complaint ¶¶ 30, 35, 44, 50, cannot withstand summary judgment. Thus, the Court will view plaintiff's Title VII, ADEA, and NYHRL claims, as well as plaintiff's remaining claims, solely on the basis of whether defendants discriminated against plaintiff on the basis of her sex, gender, age, and/or marital status, as appropriate for the respective claims.

Title VII, the ADEA, and NYHRL § 296(1) make clear that the activities they prohibit, such as those plaintiff alleges here, are those made by employers against employees or potential employees. See supra. Thus, the key issue in plaintiff's claims is whether her application to become a 7-Eleven franchisee can be construed as an application for employment.

9

(A) Title VII & the ADEA

The Second Circuit Court of Appeals recognizes several tests to determine whether a corporation is an employer versus and independent contractor for the purposes of Title VII and ADEA claims.  Frankel v. Bally, Inc., 987 F.2d 86, 89-91 (2d Cir. 1993).  These tests are the common law agency, economic realities, and hybrid tests.[3]  Id.

The traditional test, the common law agency test, considers multiple factors to determine whether an entity is an employer, including:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Id. at 89.  However, the primary focus of the test is the "hiring party's right to control the manner and means by which the product is accomplished."  Id.

The economic realities test considers entities employers if "as a matter of economic reality [the employees] are dependent upon the business to which they render service."  Id. (quoting Bartels v. Birmingham, 332 U.S. 126, 130 (1947)).  It is a much broader test, primarily for the purpose of determining who is an employer under the broad definition of "employ" of the Fair Labor Standards Act ("FLSA").  Id. (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992)).

---

[3] This Court notes that the Second Circuit has not adopted the broader "interference test" which determines whether an "indirect" employer relationship exists. Gulino v. N.Y. State Educ. Dep't, 460 F.3d 361, 374 (2d Cir. 2006).

10

The hybrid test is a combination of the common law agency test and the economic realities test.  Id. at 89-90.  Under this test, "a court examines the economic realities of the relationship but considers 'the extent of the employer's right to control the means and manner of the worker's performance' as the most important factor."  Id. at 90 (citing Spirides v. Reinhardt, 613 F.2d 826, 831 (D.C. Cir. 1979)).  The hybrid test also includes for consideration the many factors employed in the common law agency test.  Id.

As the ADEA does not have the same broad definition of "employ" as does the FLSA, the Second Circuit held that the common law agency test is the proper test to determine who is an employer under said act.  Id. at 90 (citing Darden, 503 U.S. at 322-27).  Similarly, because Title VII also does not have a broad definition of "employ" like the FLSA has, the common law agency test would also be the appropriate employer test for Title VII employment discrimination claims.  See id.  Furthermore, the Second Circuit noted that when economic dependence is a factor, it may be taken into consideration under the common law agency test, essentially following the analysis of the hybrid test.  Id.  See also Hatcher v. Augustus, 956 F. Supp. 387, 389-91 (E.D.N.Y. 1997) (following the hybrid test to determine whether an employer/employee relationship existed within the context of a franchisor/franchisee relationship under Title VII).  Accordingly, as 7-Eleven's franchisees do rely on 7-Eleven for equipment, property or building rent or acquisition, and some utilities, inter alia, economic dependence is a relevant factor to consider here.  Form M10-42 9/06, 7-Eleven, Plaintiff's Ex. B.  Thus, this Court considers economic dependence among the other factors of the common law agency test to determine whether plaintiff would be an employee for the purposes of her ADEA

11

and Title VII claims.

Following said analysis, this Court cannot find that 7-Eleven was plaintiff's potential employer when she applied for a franchise.  When 7-Eleven offers a franchise to an individual, it sets forth an agreement between the corporation and the franchisee. See Form M10-42 9/06, 7-Eleven, Plaintiff' Ex. B; Decl. of Martina Hagler ¶ 6.   This agreement defines the franchisee/franchisor relationship as that of an independent contractor.  Decl. of Martina Hagler ¶ 6; Individual Store Franchise Agreement ("Franchise Agreement").   Although plaintiff contests whether said Franchise Agreement would have been the one 7-Eleven offered her, it is not the verbatim terms of the agreement that have relevance here, but that it sets forth an independent contractor relationship.  See, e.g., Franchise Agreement at 2, cl. 2 (setting forth "an arm's-length business relationship" and stating that Franchisee agrees: "(a) to hold [herself] out to the public as an independent contractor; (b) to control the manner and means of the operation of the store; and (c) to exercise complete control over and responsibility for all labor relations and the conduct of [Franchisee's] agents and employees").  Defendants' counsel reiterated at oral arguments on the motion herein that said relationship is standard between 7-Eleven and its franchisees.  Plaintiff did not contest such assertion then or in her papers.  Plaintiff's conclusory statements that she applied for a "franchisee/employee relationship" is not sufficient to withstand summary judgment. See, e.g., Complaint ¶ 11.

Because the relationship of 7-Eleven franchisees to 7-Eleven is that of an independent contractor plaintiff cannot be an employee for the purposes of Title VII or the ADEA.  See Perry v. Burger King Corp., 924 F. Supp. 548, 553 (S.D.N.Y. 1996)

12

(dismissing franchisor Burger King Corporation from lawsuit because franchisee was an independent contractor thus it was not an employer for the purposes of plaintiff's federal civil rights discrimination claim); <u>Hatcher v. Augustus</u>, 956 F. Supp. at 388, 390-93 (Pursuant to the hybrid test, a court in the Eastern District of New York held that Southland, owner of the 7-Eleven trademark and franchisor of many 7-Eleven stores, was not an employer within the meaning of Title VII because its franchisees are independent contractors).  As plaintiff cannot be considered an employee or potential employee of 7-Eleven, it is respectfully recommended that defendants' motion for summary judgment against plaintiff's ADEA and Title VII employment discrimination claims should be granted.

    <u>(B) New York's Human Rights Law (NYHRL)</u>

    New York's "employer test" for the purposes of a NYHRL claim differs slightly from the aforementioned tests.  Here, in order to determine whether an entity may be considered an employer, the Court must analyze whether the proposed employer: "1) . . . had the power of the selection and engagement of the employee; 2) . . . made the payment of salary or wages to the employee; 3) . . . had the power of dismissal over the employee; and 4) . . . had the power to control the employee's conduct."  <u>Goyette v. DCA Adver. Inc.</u>, 830 F. Supp. 737, 746 (S.D.N.Y. 1993).  "Courts have held that the most essential factor in this analysis is the fourth one, namely whether the employer had control over the employee's conduct."  <u>Id.</u>  On the other hand, the statute does not provide for a cause of action for independent contractors.  <u>Frishberg v. Esprit de Corp, Inc.</u>, 778 F. Supp. 793, 798 (S.D.N.Y. 1991), aff'd, 969 F.2d 1042 (2d Cir. 1992).

    Plaintiff has not submitted evidence to raise a triable issue of fact regarding her

status as a potential employee of 7-Eleven.  Defendants put forth evidence that all franchisees of 7-Eleven are independent contractors.  Decl. of Martina Hagler ¶ 6. Plaintiff has not disputed this assertion.  Furthermore, none of the paperwork 7-Eleven provided to plaintiff suggested that 7-Eleven would "hire" or "fire" her as an "employee." See generally Plaintiff's Ex. B.  7-Eleven only references a franchise agreement, a contractual relationship, and even states, "This is not an offer to sell, or solicitation of an offer to buy, a franchise.  An offer is made by prospectus only."  Id.  7-Eleven advertised to plaintiff, as a potential franchisee, that she could "be [her] own boss."  Id. Additionally, 7-Eleven franchisees are solely responsible for the actual costs of payroll, whereas 7-Eleven provides only ministerial payroll services.  Form M10-42 9/06, 7-Eleven, Plaintiff's Ex. B.

Absent the necessary showing that defendants are employers or potential employers under NYHRL, plaintiff's claim cannot survive summary judgment.  Thus, it is respectfully recommended that defendants' motion for summary judgment should be granted.


## V.  42 U.S.C. § 1985 CONSPIRACY CLAIM

Plaintiff alleges that defendants conspired to violate her rights pursuant to 42 U.S.C. § 1985(3) when they denied her a 7-Eleven franchise allegedly because of her age and gender.  § 1985(3) reads in part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or

14

deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

In order for a § 1985(3) conspiracy claim to stand, plaintiff must prove that a conspiracy existed between "two or more persons."  Id.  Therefore, "there is no conspiracy if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment."  Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978).  In other words, "'a conspiracy among two or more employees of a corporation acting in the normal course of their employment does not constitute a conspiracy between two or more persons for the purposes of'" § 1985(3).  McIlwain v. Korbean Int'l Inv. Corp., 896 F. Supp. 1373, 1383 (S.D.N.Y. 1995) (quoting Platsky v. Kilpatrick, 806 F. Supp. 358, 366 (E.D.N.Y. 1992)).

In the present case, plaintiff alleges that defendants 7-Eleven, Lynch, Hagler, and Rubinett conspired together to violate her rights when they denied her a 7-Eleven franchise.  Plaintiff admits that Lynch, Hagler, and Rubinett are employees of the same corporation, 7-Eleven.  Complaint ¶¶ 6-8.  She also admits that their allegedly discriminatory actions were performed in the course of their employment duties. Plaintiff states that Lynch, in her role as 7-Eleven's national franchise sales coordinator, took plaintiff's call regarding plaintiff's application and allegedly stated that plaintiff's application should be denied because plaintiff was a single woman over forty (40) years old.   See Complaint ¶ 13.  Later, Hagler, in her role as 7-Eleven's franchise sales manager, took another of plaintiff's calls and, as plaintiff asserts, did not dispel Lynch's allegedly discriminatory motives for denying plaintiff's application.  Complaint ¶ 14.

15

Finally, Rubinett, as 7-Eleven's corporate counsel, responded to plaintiff's letter regarding the denial of her application.   Complaint ¶ 20.  Plaintiff alleges that Rubinett's response letter "substantially confirms the fact that the basis of denial . . . was Lynch['s discriminatory comments]."  Id.

As initial matter, plaintiff's own conclusions as to Hagler's and Rubinett's motives are not sufficient evidence to establish their involvement in an alleged conspiracy. Regardless, plaintiff asserts that the defendants are employees of the same company and acted pursuant to their regular employment duties.  Such facts are directly contrary to the requirements that a § 1985(3) conspiracy be among "two or more persons."  42 U.S.C. § 1985(3).  Because plaintiff has failed to establish that defendants acted as "two or more persons," it is respectfully recommended that summary judgment should be granted in favor of defendants in connection with plaintiff's § 1985(3) claim.


## VI.  UNITED STATES AND NEW YORK STATE CONSTITUTIONAL CLAIMS

(A) United States Constitution

Plaintiff asserts claims pursuant to the First, Eighth, Sixteenth, and Seventeenth Amendments of the United States Constitution.  In order for liability to attach to defendants for violations of the First and Eighth Amendments, the defendants must be state actors or their actions must be attributable to the state.  Leeds v. Meltz, 85 F.3d 51, 54 (2d Cir. 1996) ("It is axiomatic that the First . . . Amendment[] . . . appl[ies] only to state actors); see Heisler v. Kralik, 981 F. Supp. 830, 837 (S.D.N.Y. 1997) (Eighth Amendment claim brought under 42 U.S.C. § 1983, which requires state action).  A plaintiff can show that a private entity is a state actor through one of three tests:

16

compulsion, close nexus/entwinement, or public function.  See Brentwood Acad. v.
Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 296 (2001).  Here, plaintiff has not
asserted facts, or even allegations, to support that defendants are state actors.

As to plaintiff's remaining United States Constitution claims, plaintiff has not
stated causes of action for which relief can be granted.  The Sixteenth Amendment
reads: "The Congress shall have power to lay and collect taxes on incomes, from
whatever source derived, without apportionment among the several States, and without
regard to any census or enumeration."  U.S. Const. amend. XVI.  The thrust of the
Seventeenth Amendment is: "The Senate of the United States shall be composed of two
Senators from each State, elected by the people thereof, for six years; and each
Senator shall have one vote."  U.S. Const. amend. XVI.  Plaintiff has asserted no facts
or allegations relevant to the rights associated with Congress' taxing power or senatorial
representation.  Her claims are merely conclusory.

Absent plaintiff's pleading of necessary facts pursuant to each of her
constitutional claims, plaintiff has failed to prove essential elements of these claims.
Therefore, it is respectfully recommended that summary judgment should be granted in
favor of the defendants.

### (B) New York State Constitution

Plaintiff asserts equal protection and discrimination claims pursuant to article 1,
section 11 of the New York Constitution in connection with defendants' allegedly
denying her franchise application.  Article 1, section 11 provides that: (1) "No person
shall be denied the equal protection of the laws of" New York and (2) "[n]o person shall,
because of race, color, creed or religion, be subjected to any discrimination in his or her

17

civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state."  N.Y. Const. Art. 1, § 11.  "The first part of this section, the equal protection clause, like 42 U.S.C. [§] 1983, requires 'state action' as a prerequisite to a claim."  Holy Spirit Ass'n for the Unification of World Christianity v. N.Y. State Cong. of Parents & Teachers, Inc., 408 N.Y.S.2d 261, 265 (N.Y. Sup. Ct. 1978) (citing Dorsey v. Stuyvesant Town Corp., 299 N.Y. 512, 530 (App. Div. 1949)). The latter section has no such requirement.  See id.

Plaintiff claims that defendants denied her equal protection of the law and discriminated against her by denying her a 7-Eleven franchise "because of her age, race, color and gender."  Complaint at ¶ 13.  Regarding the article 1, section 11 equal protection claim, plaintiff has not alleged or supplied any facts indicating that defendants 7-Eleven, Lynch, Hagler, and Rubinett are state actors.  See supra.  Thus, plaintiff has failed to meet the "state action" requirement of her claim.

Regarding plaintiff's discrimination claim, plaintiff must assert facts indicating she was discriminated against because of her "race, color, creed or religion."  N.Y. Const. Art. 1, § 11.  However, the only fact plaintiff asserts regarding discrimination is that defendant Lynch "felt [plaintiff's] application should be denied because . . . 'a single female of age 40+ would [not] be suitable for this type of franchise.'"  Complaint at ¶ 13. Namely, plaintiff alleges defendants discriminated against her because of age and gender.  Article 1, section 11's discrimination clause does not provide a basis for a claim on these allegations.

Because plaintiff has provided no proof that defendants are state actors or that she was discriminated against because of race, color, creed, or religion, it is respectfully

recommended that defendants' motion for summary judgment of plaintiff's New York Constitution claims should be granted.

## VII.  REMAINING NEW YORK STATUTORY LAW CLAIMS

Although none of plaintiff's federal claims survive, plaintiff contends that the Court has original jurisdiction based on diversity of citizenship.[4]  Pursuant to 28 U.S.C. § 1332, diversity jurisdiction exists where the parties are citizens of different states and the amount in controversy exceeds $75,000.  § 1332(a)(1).  Defendants have not opposed plaintiff's assertion that the parties are citizens of different states nor that plaintiff's claims exceed $75,000.  Thus, the Court reviews plaintiff's remaining New York claims.

(A) NYHRL

Plaintiff alleges a cause of action pursuant to New York Executive Law § 291(1)-(2), part of NYHRL, which establishes in relevant part that the opportunity to obtain employment and use or own commercial property "without discrimination because of age, race, creed, color, national origin, sexual orientation, military status, sex or marital status" are civil rights.  N.Y. Exec. Law § 291(1)-(2).  Defendants contend that § 291 does not provide an independent statutory basis for relief and that plaintiff's employment discrimination claims pursuant to §§ 296(1)(a) and 296(1-a)(b)-(c) articulate plaintiff's claims therein.  Because § 291(1) refers specifically to employment discrimination, the

---

[4] Plaintiff invokes diversity jurisdiction under 28 U.S.C. § 1391, which describes applicable venues for civil actions brought to federal court pursuant to diversity jurisdiction.  Because plaintiff brings her complaint pro se, the Court construes her assertion to invoke diversity jurisdiction pursuant to 28. U.S.C. § 1332.

19

Court concludes that plaintiff's cause of action here is duplicative of her §§ 296(1)(a) and 296(1-a)(b)-(c) claims, as discussed above.  However, § 291(2) guarantees the ownership, use, and occupancy of commercial space without discrimination and thus is entirely different from plaintiff's employment discrimination claims.  NYHRL provides for actionable claims of this nature under § 296(5)(b).  The Court construes plaintiff's claim broadly as such pursuant to her <u>pro se</u> status.

The legislature, in enacting NYHRL, made clear its intent to protect individuals in New York State from discrimination.  It found that "the state has the responsibility to act to assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life . . . ."  N.Y. Exec. Law  § 290(3).  The goal of the legislation is "to eliminate and prevent discrimination in employment, in places of public accommodation, resort or amusement, in educational institutions, in public services, in housing accommodations, in commercial space and in credit transactions and to take other actions against discrimination" as provided under the NYHRL.  <u>Id.</u>    Under § 296(5)(b), NYHRL provides that:

> It shall be an unlawful discriminatory practice for the owner, lessee, sub-lessee, or managing agent of, or other person having the right of ownership or possession of or the right to sell, rent or lease, land or commercial space . . . [t]o refuse to sell, rent, lease or otherwise deny to or withhold from any person . . . land or commercial space because of the . . . sex, age, . . . [or] marital status . . . of such person . . . ; [or] [t]o discriminate against any person because of . . . sex, age, . . . [or] marital status . . . in the terms, conditions or privileges of the sale, rental or lease of any such land or commercial space; or in the furnishing of facilities or services in connection therewith.

N.Y. Exec. Law  § 296(5)(b)(1)-(2).

NYHRL defines "commercial space" as:

20

> [A]ny space in a building, structure, or portion thereof which is used or
> occupied or is intended, arranged or designed to be used or occupied for
> the manufacture, sale, resale, processing, reprocessing, displaying,
> storing, handling, garaging or distribution of personal property; and any
> space which is used or occupied, or is intended, arranged or designed to
> be used or occupied as a separate business or professional unit or office
> in any building, structure or portion thereof.

N.Y. Exec. Law  § 292(13).

A 7-Eleven franchise falls within the meaning of said "commercial space."  It is a space in a building or structure designed to be used to sell personal property. Furthermore, the special arrangement 7-Eleven establishes with its franchisees involves a landlord/tenant relationship.  7-Eleven advertises to potential franchisees that it "obtains and bears the ongoing cost of the land, building and store equipment" and "then leases (or subleases) a . . . 7-Eleven Store . . . to a Franchisee."  Form M10-42 9/06 at 1, 7-Eleven, Plaintiff's Ex. B.  In sum, 7-Eleven obtains and maintains commercial space for the franchisee, pays property taxes on and/or leases said space, requires the franchisee to pay an initial franchise fee to obtain said space, and share profits derived from the commercial enterprise on an ongoing basis.  Id. at 1-2.  As noted, the statute here evidences a broad intent to eliminate discrimination within the state in the renting and leasing of commercial space.  Here, given 7-Eleven's statements regarding leases to franchisees as part of its franchise relationships, as well as the cost and fee arrangements in connection with said relationship, the Court concludes that denying plaintiff a 7-Eleven franchise for the alleged discriminatory reasons would be covered by said statute; particularly given the landlord/tenant type arrangement in the franchise.  See generally In re Bruno v. Pembrook Mgmt., Inc., 628 N.Y.S.2d 971, 974-75 (App. Div. 1995) (defendants' refusal to renew plaintiff's lease, if

21

based on discriminatory purposes, would be actionable under NYHRL).  Accordingly, plaintiff's assertion that Lynch told her that her franchise application should be denied because she was a single female over the age of forty (40) sufficiently states an actionable claim.

However, plaintiff has not submitted sufficient evidence to render all defendants liable.  Individuals may be sued as employers for violations of NYHRL only if they have ownership interests in the hiring company or do more than carry out personnel decisions of others.  Ahmed v. Compass Group, No. 99 Civ. 10032, 2000 WL 1072299, at *5 (S.D.N.Y. Aug. 3, 2000) (citing Patrowich v. Chem. Bank, 473 N.E.2d 11, 12 (N.Y. 1984)).  However, simply because an employee "has a title as an officer and is the manager or supervisor of a corporate division," such employee is not automatically "individually subject to suit with respect to discrimination" under NYHRL.  Patrowich v. Chem. Bank, 473 N.E.2d 11, 12 (N.Y. 1984).  As such, since plaintiff alleges Lynch carried out the decision to deny her the 7-Eleven franchise, Lynch, as 7-Eleven, can be held liable for said alleged violation.  On the other hand, plaintiff has not submitted evidence that Hagler and Rubinett have an ownership interest in 7-Eleven or do more than carry out personnel decisions of others.  Plaintiff has not alleged facts sufficient to show that Hagler and Rubinett also made their own discriminatory personnel decisions.  Plaintiff's statement that Hagler and Rubinett affirmed the denial of her franchise application based "totally upon the opinion of defendant, Jeanne Lynch" is conclusory.  See Complaint ¶ 16.  None of plaintiff's assertions regarding telephone conversations with Hagler, or letter correspondences to and from Hagler and Rubinett, show that Lynch or plaintiff communicated to Hagler or Rubinett Lynch's alleged discriminatory

motives.

Thus, it is respectfully recommended that defendants' motion for summary judgment should be denied with respect to § 296(5)(b)(2) claims against Lynch and 7-Eleven.  It is also respectfully recommended that defendants' motion for summary judgment should be granted with respect to § 296(5)(2) claims against Hagler and Rubinett; and all § 296(5)(1) claims.

(B) New York "Aid and Abet" Claim

Plaintiff alleges that defendants conspired to violate her rights pursuant to New York Executive Law § 296(6) when they denied her a 7-Eleven franchise "and otherwise discriminat[ed] against [her]" allegedly because of her "age, sex, marital status, race, color, etc."  Complaint ¶ 47.  The law states: "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."  N.Y. Exec. Law § 296(6). Plaintiff alleges two separate NYHRL claims underlying the § 296(6) "aid and abet" claim: employment discrimination, see supra §IV, and discrimination in the use of commercial space, see supra §VII(A).  As it is respectfully recommended that plaintiff's employment discrimination claim should be dismissed for plaintiff's failure to establish an employee/employer relationship, it is also respectfully recommended that plaintiff's § 296(6) "aid and abet" employment discrimination claim should be dismissed for failure to establish an underlying claim.  However, as mentioned above, plaintiff has stated an actionable claim in connection with her discrimination in the use of commercial space claim.  Thus the Court must consider whether defendants "aided or abetted" in violation of § 296(6).

23

As mentioned above, individuals may be sued as employers for violations of NYHRL, but plaintiff has only alleged sufficient evidence as to defendant Lynch in this regard.  Additionally, under § 296(6), an individual "who actually participates in the conduct giving rise to a discrimination claim" can also be held personally liable.  Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by* Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 753 (1998).  However, plaintiff has only alleged insufficient conclusions that Hagler and Rubinett actually participated in said conduct.

Thus, the only defendants remaining in this claim would be 7-Eleven and Lynch. Lynch cannot be held liable under NYHRL for aiding and abetting her own alleged discriminatory conduct.  Goldin v. Engineers Country Club, 864 N.Y.S.2d 43, 46 (App. Div. 2008).  Thus, it is respectfully recommended that defendants' motion for summary judgment as to plaintiff's § 296(6) claims should be granted.

(C) New York Civil Rights Law § 40-c

Plaintiff brings a cause of action under New York Civil Rights Law § 40-c, which provides that:

1. All persons within the jurisdiction of this state shall be entitled to the equal protection of the laws of this state or any subdivision thereof.

2. No person shall, because of race, creed, color, national origin, sex, marital status, sexual orientation or disability, as such term is defined in section two hundred ninety-two of the executive law, be subjected to any discrimination in his or her civil rights . . . by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision of the state.

Plaintiff alleges that defendants violated her civil rights in denying her the use, ownership, occupancy, and privileges thereof of a 7-Eleven franchise because she is a

24

single woman over the age of forty (40).  Pursuant to NYHRL, New York guarantees as a civil right the use, ownership, occupancy, and privileges of commercial space without discrimination.  N.Y. Exec. Law §§ 291(2), 296(5)(b).  As discussed above, plaintiff has sufficiently alleged a violation of such rights.

However, in order for a plaintiff to bring a cause of action pursuant to New York's Civil Rights Law, a plaintiff must notify the New York State Attorney General "at or before the commencement of any action under this section."  N.Y. Civ. Rights Law § 40-d.  "Failure to comply with [this] statutory prerequisite mandates dismissal of the claim."  Shepard v. Frontier Commc'ns Servs., Inc., 92 F. Supp. 2d 279, 287 (S.D.N.Y. 2000).  Defendants allege that plaintiff failed to give notice to the Attorney General.  Plaintiff contends that her letter of July 10, 2007 to the attorney general meets the statutory requirement of notice.  See Plaintiff's Ex. N.

Construing plaintiff's letter broadly, the Court concludes that it meets the requirement of notice to the Attorney General.  Plaintiff sent the letter to an office of the New York State Attorney General and explained the nature of her complaint against 7-Eleven.  Id.  She advised, "I wish to file a complaint against 7-Eleven Inc., for a violation of my civil rights and other applicable laws and statutes."  Id.  Plaintiff's intent to notify the Attorney General could not be more clear.  Furthermore, although defendants question whether plaintiff actually sent said letter, Reply Memo. in Support of Defs. Motion to Dismiss at 8, their conclusory allegations are insufficient to refute that plaintiff complied with the notice requirements of § 40-c.  Therefore, it is respectfully recommended that defendants' motion for summary judgment of plaintiff's New York Civil Rights Law claim be denied.

25

## VIII.  CONCLUSION

For all of the foregoing reasons, I conclude, and respectfully recommend that defendants' motion for summary judgment should be GRANTED in part and DENIED in part.

## IX.  NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(B), as amended, and Rule 72(b), Fed. R. Civ. P., the parties shall have ten (10) days from receipt of this Report  to serve and file written objections to this Report and Recommendation.  If copies of this Report are served upon the parties by mail, the parties shall have thirteen (13) days from receipt of this Report to file and serve written objections.  See Fed. R. Civ. P. 6(d).  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Cathy Seibel at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.  See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to the Honorable

26

Requests for extensions of time to file objections must be made to the Honorable Cathy Seibel and not to the undersigned.


Dated:   March   19   , 2009          Respectfully Submitted:

       White Plains, New York

_____

GEORGE A. YANTHIS, U.S.M.J.